## Shea, Jr. v. McCadden

*Frank T. Hazel*, for plaintiffs.

*James C. Brennan*, for defendants.

REED, J., May 7, 1969.—On June 8, 1965, plaintiffs filed a complaint in trespass against defendants, alleging inter alia: "severe emotional strain and

resultant diabetes and hypertension; . . . shock and injury to her nerves and nervous system"; which allegation set the stage for the legal issue now before us.

Defendants promptly answered plaintiffs' complaint, and in the ensuing time plaintiffs and defendants respectively filed and answered interrogatories, and plaintiffs also deposed defendants. Then defendants requested plaintiff, Irene P. Shea, to submit to psychiatric examination. Plaintiff promptly refused. Plaintiff contends she will submit to such type examination, but not by the doctor-psychiatrist employed by defendants, for the reason that prior to the accident which is the subject of this litigation, the same doctor-psychiatrist had been her own treating psychiatrist in her employ then.

Whereupon, defendants countered with a rule to show cause upon plaintiff, why she should not be ordered by us to obey defendants' request. The petition for the rule and answer thereto leave only the legal issue which was argued before us en banc; can a party litigant be compelled to submit to medical or mental examination by a physician previously employed by him, but now the adverse party's proposed examiner?

Both parties argue the applicability or nonapplicability of the privileged communication statute between physician and patient. This statute, Act of June 7, 1907, P. L. 462, sec. 1, 28 PS §328, provides:

"No person authorized to practice physics or surgery shall be allowed, in any civil case, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, *except in civil cases, brought by such patient, for damages on account of personal injuries.*" (Italics supplied.)

The statute is of very limited application, and by its exception wholly inapplicable in cases, as this one, for damages on account of personal injuries. The exception gives rise to the rule that allows a party litigant to depose his adverse party's physician, or to subpoena him and all his records concerning his patient-party litigant at trial, limited only by Pa. Rule of Civil Procedure 4011 (f).

This conclusion does not, however, settle this issue, for it fails to satisfy the crux of the issue: *examined by her own previous physician now in defendant's employ.* Hence, plaintiffs' argument that defendants can depose plaintiff's physician anyway, is meaningless, because they already have more than a deposition could reveal, they have the physician himself, and now aligned with them. We are not therefore concerned with whatever the physician garnered during the course of his prior employment by plaintiff. Our concern is defendants' employment of him to now examine plaintiff, with his prior accumulated knowledge gained at a time when plaintiff reposed the fullest trust in his ability, integrity, and confidence, and which trust, we note, is absolutely essential to the relationship of patient and doctor, if the doctor is to function at the most salutary level to apply his healing skills for the patient's benefit. With this, the physician's hand should have been stayed, out of duty to his professional posture.

The case of Alexander v. Knight 25 D. & C. 2d 649 (1961), affirmed per curiam 197 Pa. Superior Ct. 179, dealt with a like situation. The court's conclusions there are adopted with greater pertinence here:

"We are of the opinion that members of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients. They owe their patients more than just medical care for which payment is exacted; there is a duty

of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed. That further includes a duty to refuse affirmative assistance to the patient's antagonist in litigation. The doctor, of course, owes a duty to conscience to speak the truth; he need, however, speak only at the proper time."

To allow this physician to conduct this examination would be to give legal sanction to a breach of the confidential relationship between patient and doctor.

### ORDER

And now, May 7, 1969, defendants' petition for rule to show cause, dated January 22, 1969, is dismissed, and the prayer thereof refused; and the doctor proposed therein to examine plaintiff, Irene P. Shea, is absolutely prohibited from examining her, or participating in or attending such examination, if conducted.